IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STOP THE CASINO 101 COALITION, et al.,

    Plaintiffs,

v.

KEN SALAZAR, et al.,

    Defendants.

FEDERATED INDIANS OF GRATON RANCHERIA,

    Intervenor.

No. C 08-02846 SI

**ORDER GRANTING DEFENDANTS' AND INTERVENOR'S MOTIONS TO DISMISS**

On March 27, 2009, the Court heard oral argument on the motions of defendants and intervenor to dismiss plaintiffs' First Amended Complaint. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the motions are GRANTED.

**BACKGROUND**

This case concerns an action taken by officials of the United States Department of the Interior ("Secretary").[1] On April 18, 2008, the Secretary approved an application by the Federated Indians of

---

[1] The First Amended Complaint names Dirk Kempthorne as Secretary of the United States Department of the Interior. Ken Salazar has now replaced Kempthorne as Secretary and is therefore substituted as a defendant. *See* Fed. R. Civ. Pro. 25(d).

the Graton Rancheria ("the Tribe")[2] to accept a 254-acre parcel of land ("the parcel") near the City of Rohnert Park, California into trust. The Secretary acted pursuant to the Graton Rancheria Restoration Act, 25 U.S.C. §§ 1300n *et seq.* ("the Restoration Act"). The Restoration Act restored federal recognition to the Tribe. *See* 25 U.S.C. § 1300n-2(a). It also provided a mechanism for the federal government to create a reservation for the Tribe by accepting land into trust on the Tribe's behalf:

> a) Lands to be taken in trust. Upon application by the Tribe, the Secretary shall accept into trust for the benefit of the Tribe any real property located in Marin or Sonoma County, California, for the benefit of the Tribe after the property is conveyed or otherwise transferred to the Secretary and if, at the time of such conveyance or transfer, there are no adverse legal claims to such property, including outstanding liens, mortgages, or taxes.
> (b) Former trust lands of the Graton Rancheria. Subject to the conditions specified in this section, real property eligible for trust status under this section shall include Indian owned fee land held by persons listed as distributees or dependent members in the distribution plan approved by the Secretary on September 17, 1959, or such distributees' or dependent members' Indian heirs or successors in interest.
> (c) Lands to be part of reservation. Any real property taken into trust for the benefit of the Tribe pursuant to this subchapter shall be part of the Tribe's reservation.
> (d) Lands to be nontaxable. Any real property taken into trust for the benefit of the Tribe pursuant to this section shall be exempt from all local, State, and Federal taxation as of the date that such land is transferred to the Secretary.

25 U.S.C. § 1300n-3.

On March 24, 2006, the Tribe submitted an application to the Secretary to accept the parcel into trust. The Secretary notified the Tribe by letter dated April 18, 2008 that the federal requirements for acquiring the parcel had been satisfied. Noting that the Tribe "intends to develop a gaming facility on the parcel," the Secretary stated that its acceptance of the land into trust was not tantamount to approval to operate a gaming facility:

> A determination on whether the property to be acquired will be eligible for gaming under the Indian Gaming Regulatory Act (IGRA) has not been made because such a determination is unnecessary when the Secretary's decision on whether to acquire the land in trust is not discretionary, but mandated by an act of Congress.
> At this time the Tribe does not have a class III tribal-state compact with the State of California.
> Notwithstanding the Secretary's ministerial decision to take the land in trust, the Tribe could not engage in gaming activities on the land without first complying with all

---

[2] The Tribe is the successor of the Graton Rancheria. The Graton Rancheria was one of more than a hundred Indian tribes and bands that were divested of their tribal status and whose land was transferred from trust into private ownership between 1945 and 1961 pursuant to the federal government's "Termination" policy. *See* Intervenor's Mot. to Dismiss, ex. 2 (*Oversight Hearing before the Committee on Resources, House of Representatives*, Serial No. 106-95 (May 16, 2000)); David H. Getches, et al., *Cases and Materials on Federal Indian Law* 205 (2005).

applicable requirements of the IGRA.

*See* Intervenor's Mot. to Dismiss, ex. 4, at 1, 4. The Secretary also stated that compliance with the National Environmental Policy Act ("NEPA") was not required: "Although NEPA compliance is generally required on trust acquisitions . . . NEPA compliance is not required in this instance since the acquisition of property for the Graton Rancheria is explicitly mandated by Congress under the Graton Rancheria Restoration Act." *Id.* The Secretary's letter approved the conveyance of the parcel into trust thirty days after publication of notice within the Federal Register. Plaintiffs filed this action within the thirty-day period.

Plaintiffs are Stop the Casino 101 Coalition, an unincorporated association of citizens who live or own land or businesses close to the parcel, and individual members of the association. Plaintiffs allege that the Secretary's April 18 approval provided that the parcel shall be taken into trust for the purpose of a gambling casino and that the Tribe's proposed hotel and casino complex cause harm to plaintiffs' property by, *inter alia*, increasing traffic congestion, crime and pollution. Defendants are Ken Salazar, the United States Secretary of the Interior; Carl Artman, former Assistant Secretary of the Department of the Interior; the United States Department of the Interior; the Bureau of Indian Affairs ("BIA"); Jerry Gidnor, Director of the BIA; and Dale Morris, Pacific Regional Director of the BIA. This Court granted the Tribe's motion to intervene in this suit on December 15, 2008.

Plaintiffs seek (1) declaratory relief that if the Secretary accepts title to the parcel in trust for the Tribe, the property would remain under the plenary jurisdiction of California and would be subject to state laws, including prohibitions against casino gambling; (2) injunctive relief setting aside the Secretary's approval of the Tribe's trust application as arbitrary and capricious; (3) declaratory relief that the Secretary's approval of the Tribe's trust application is unconstitutional and injunctive relief enjoining the Secretary from taking land into trust; and (4) declaratory relief that the parcel is not eligible for gaming activities as authorized by IGRA. Now before the Court are the motions of defendants and the Tribe to dismiss Stop the Casino's First Amended Complaint ("FAC").

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. *See* Fed. R. Civ. Pro. 12(b)(1). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citation omitted). "In resolving a Rule 12(b)(1) factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *In re Digimarc Corp. Derivative Litigation*, 549 F.3d 1223, 1236 (9th Cir. 2008) (citation omitted).

## DISCUSSION

**1.    Injury from Proposed Casino**

Defendants and the Tribe contend that the FAC should be dismissed for lack of Article III standing because plaintiffs have not alleged that they have suffered an injury in fact. Standing is a threshold requirement, without which this Court has no jurisdiction. *Arakaki v. Hawaii*, 314 F.3d 1091, 1097 (9th Cir. 2002). A plaintiff must establish that it satisfies all three elements for Article III's "case or controversy" requirement. *Table Bluff Reservations (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 882 (9th Cir. 2001). The plaintiff must show that:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). The injury in fact requirement ensures that a court is adjudicating claims arising from actual injuries as "[t]he federal courts do not have the constitutional authority to adjudicate . . . metaphysical injuries . . . ." *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 822 (9th Cir. 2002).

Plaintiffs contend that they have alleged that they have suffered injury in fact through the following allegations: (1) the Secretary's approval harms plaintiffs' quality of life and environment because the planned casino will cause traffic congestion, crime, air and noise pollution, and loss of open

4

space, FAC ¶¶ 15-31; (2) plaintiffs will suffer economic injury because the planned casino will deplete groundwater, increase flooding, and depreciate the value of their property, *id.*; and (3) plaintiffs will lose the protection of state law, *id.*

Defendants and the Tribe argue that plaintiffs' first set of allegations – that plaintiffs will be injured by environmental degradation as a result of the construction of a casino complex – fail to articulate an injury in fact because the alleged injuries are speculative. The Court agrees. The Secretary's April 18 approval explicitly stated that while the Tribe intends to build a casino on the parcel, the Secretary's acceptance of the land into trust did not authorize this project. To the contrary, the Tribe will have to adhere to the requirements of the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701 *et seq.* For example, the National Indian Gaming Commission must approve a management contract for the operation of gaming, 25 U.S.C. § 2710(d)(9), as well as a gaming ordinance, 25 U.S.C. § 2705(a)(3); and the Tribe must negotiate a gaming compact with the State of California, 25 U.S.C. § 2710(d)(1)(C). Until these requirements are met, the Tribe has no authorization to operate a gaming facility on the parcel and the environmental impacts that plaintiffs fear cannot occur. The alleged injury through environmental degradation is therefore "too speculative" to invoke this Court's jurisdiction. *See Whitmore v. Arkansas*, 495 U.S. 149, 157 (1990) (alleged injuries too speculative when petitioner claimed he may eventually secure federal habeas relief, be retried, convicted, and sentenced to death a second time).

Citing *Davis v. Federal Election Com'n*, plaintiffs claim that the injuries they allege are "real, immediate, and direct." 128 S.Ct. 2759, 2769 (2008). In fact, comparing this case to *Davis* establishes that plaintiffs' alleged injuries are not so realized. The Supreme Court found that Davis faced an injury in fact from the operation of the challenged campaign finance statute because he "had declared his candidacy and his intent to spend more than $350,000 of personal funds in the general election campaign whose onset was rapidly approaching. [The challenged statute] would shortly burden his expenditure of personal funds by allowing his opponent to receive contributions on more favorable terms, and there was no indication that his opponent would forgo that opportunity." *Id.* Here, there are numerous requirements that must be met under NEPA and IGRA before the condition that will cause plaintiffs' injuries – the building of a casino complex on the parcel – can occur.

5

Plaintiffs additionally cite cases in which citizens have been found to have standing to challenge trust transfers under IGRA, but these authorities are also unhelpful to plaintiffs. In the cases cited by plaintiffs, standing existed because the plaintiffs alleged that the Secretary had violated provisions of NEPA and IGRA. *See Citizens Exposing Truth about Casinos v. Kempthorne*, 492 F.3d 460, 464 (D.C. Cir. 2007) (prudential standing found where plaintiffs alleged that Secretary violated a provision of IGRA when it accepted property into trust); *TOMAC v. Norton*, 193 F. Supp. 2d 182, 190 (D.D.C. 2002) (constitutional standing found where plaintiff alleged that the Secretary had violated NEPA and IGRA); *City of Roseville v. Norton*, 219 F. Supp. 2d 130, 139 (D.D.C. 2002) (constitutional standing existed where plaintiffs alleged that the Secretary's decision to take land into trust violated IGRA and NEPA). Here, plaintiffs do not allege that the Secretary's decision violated NEPA or IGRA; indeed, they cannot, because administrative review under these statutes is not yet complete.

Finally, plaintiffs contend that their allegations concerning acts taken by the Tribe show that the Tribe "unequivocally intends" use the parcel for a casino. Pl. Opp. to Defs' Mot. at 9; *see, e.g.*, FAC ¶ 75 (the Tribe requested that the National Indian Gaming Commission ("NIGC") prepare an environmental impact statement for approval of a gaming management contract between the Tribe and a casino management company; the NIGC published its "notice of intent" to prepare an environmental impact statement on February 12, 2004 and its "final scoping report" in August of 2005); FAC ¶ 81 (on March 24, 2006, the NIGC published a supplemental "notice of intent" regarding the management contract between the Tribe and the casino management company); FAC ¶ 76 (in October of 2003 the Tribe entered into a memorandum of understanding with Rohnert Park's city council regarding the operation of a casino).[3] These allegations do not support plaintiffs' contention that they have

---

[3] Plaintiffs also argue that the "BIA has taken the position that no further determination need be made in order for [the Tribe] to operate a casino on the property." Pl. Opp. to Def. Mot. at 9. It is difficult to see how the evidence plaintiffs cite – page 6 of the Secretary's April 18 letter – supports this argument. On page 6, the Secretary concludes (1) that the Restoration Act supercedes BIA regulations setting forth the conditions under which land may be acquired in trust; (2) that "the Tribe could not engage in gaming activities on the land without first complying with all applicable requirements of the IGRA"; and (3) that while NEPA compliance is not required, the NIGC will complete an environmental impact statement in connection with its consideration of a management contract. Defs. Mot. to Dismiss, ex. 1 at 6-7.

6

constitutional standing. Irrespective of the Tribe's intentions – and the Tribe does not dispute that it seeks to use the parcel to operate a casino – the Secretary's action on April 18 did not approve the Tribe's plan. Until the Tribe obtains such approval, plaintiffs' injuries remain too anticipatory to create standing.

In light of the foregoing discussion, the Court finds that plaintiffs' other allegations concerning standing (i.e. that the Secretary's action will cause them (1) economic injury and (2) loss of the protection of state law) also fail. Plaintiffs' contention that the planned casino will depreciate the value of their property depends on their contention that the Secretary's April 18 decision permitted a casino to be built on the parcel, which it did not. Plaintiffs' allegation concerning their loss of the protection of state law is similarly circular. Plaintiff contend that they will be injured through the loss of "the protection of state regulation over land uses, air and water quality, traffic safety, and adequate law enforcement," FAC ¶ 30, *if* the Tribe is allowed to operate a casino on the parcel. At the risk of repetition, the Secretary's decision did not permit the Tribe to operate a casino.

### 2.     **Procedural Injury**

Plaintiffs also argue that they have satisfied the injury in fact requirement by showing that they have suffered a procedural injury. In a "procedural injury" case, "to show a cognizable injury in fact, a plaintiff must allege that (1) the agency violated certain procedural rules; (2) these rules protect a plaintiff's concrete interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests." *Nuclear Info. and Res. Serv. v. Nuclear Regulatory Comm'n*, 457 F.3d 941, 949 (9th Cir. 2006). Plaintiffs contend that the Secretary's decision to accept the land into trust violated subsections 1300n-3(a) and (b) of the Restoration Act and therefore should be set aside under the Administrative Procedures Act, 5 U.S.C. § 706(2). Plaintiffs contend that the proceeding in this Court – brought within the review period following the notice of agency decision – is their only opportunity to seek redress for their supposed procedural injury.[4]

---

[4] The Court notes that in their papers and at oral argument, defendants and the Tribe have argued that this notice period is not the only window for plaintiffs to prevent a casino from being built on the parcel – plaintiffs will have ample opportunity to raise their concerns about the environmental effects

7

Subsection (a) provides that the Secretary shall accept into trust land "conveyed or otherwise transferred to the Secretary and if, at the time of such conveyance or transfer, there are no adverse legal claims to such property, including outstanding liens, mortgages, or taxes." *See* 25 U.S.C. § 1300n-3(a). Plaintiffs claim that the Secretary violated subsection (a) because there was an adverse legal claim on the parcel. Specifically, plaintiffs allege that some of the parcel is subject to adverse claims under the California Land Conservation Act of 1965, also known as the Williamson Act, Cal. Gov't Code §§ 51200 *et seq.*

The Williamson Act is a legislative effort to preserve agricultural land and discourage premature urban development. *County of Humboldt v. McKee*, 165 Cal. App. 4th 1476, 1487 (2008). "The act empowers local governments to establish 'agricultural preserves' consisting of lands devoted to agricultural uses and other uses compatible therewith. Upon establishment of such preserves, the locality may offer to owners of included agricultural land the opportunity to enter into annually renewable contracts that restrict the land to open space use for at least 10 years. In return, the landowner is guaranteed a relatively stable tax base, founded on the value of the land for open space use only and unaffected by its development potential." *Sierra Club v. City of Hayward*, 28 Cal.3d 840, 851 (1981) (citations omitted). Here, plaintiffs allege that some of the parcel is subject to Williamson Act contracts. FAC 103; *see also* FAC, ex. 2 (May 1, 2006 letter from California Governor Legal Affairs Secretary).

The Court disagrees with plaintiffs' contention that the existence of Williamson Act contracts over some of the parcel confers standing on plaintiffs. Plaintiffs cite section 51285 of the California Government Code for the proposition that "as citizens of Sonoma County," the Williamson Act contracts give them an adverse contractual claim against proposed non-conforming development of the parcel. Accepting for the sake of argument that a Williamson Act contract constitutes an "adverse legal claim" within the meaning of § 1300n-3(a), plaintiffs have not established that as citizens Sonoma County, the contracts give them standing to protest the transfer of the parcel. Section 51285 provides that individuals whose property is located in the same county or city as land that is subject to a Williamson Act contract may protest the cancellation of such a contract during the cancellation hearing.

---

of a casino during the NEPA and IGRA administrative review processes.

*See* Cal. Gov't Code § 51285. The Williamson Act expressly provides that a *city or county* may sue to enforce a Williamson Act contract. *See* Cal. Gov't Code § 51285. Plaintiffs cite no provision establishing that individuals have the right to enforce the contracts simply by virtue of owning property in the same city or county as the subject land. Even if individuals did have such a right, they could not enforce a Williamson Act contract until the owner of the subject land seeks cancellation, *see* Cal. Gov't Code § 51285, and there is no evidence that the Tribe seeks to cancel the Williamson Act contracts at issue here.[5] For these reasons, plaintiffs have failed to establish that the Secretary's decision to accept the land into trust despite the purported existence of Williamson Act contracts constituted a procedural injury to plaintiffs.

Plaintiffs' argument that the Secretary's decision to accept the land into trust violated subsection 1300n-3(b) of the Restoration Act is similarly unavailing. Subsection 1300n-3(b) provides that "real property eligible for trust status . . . shall include Indian owned fee land . . . ." 25 U.S.C. 1300n-3(b). Plaintiffs read this provision to mean that the *only* eligible land is Indian owned fee land and conclude that this parcel, which is in fact owned by a subsidiary of a Nevada-based casino operator, cannot qualify. The statute, however, simply does not provide that *only* Indian owned fee land is eligible for trust status. In any event, and assuming for the sake of argument that the Secretary violated the Restoration Act by accepting non-Indian owned fee land into trust, this violation would not confer standing on plaintiffs. Plaintiffs have not established that the supposed prohibition on acquisition of non-Indian owned fee land was intended to protect the interests that plaintiffs identify in their complaint (e.g. traffic safety, preventing environmental degradation, and maintaining property value). *See Nuclear Info.*, 457 F.3d at 949. Similarly, they have not established that it is "reasonably probable," *id.*, that the Secretary's acceptance of the land will threaten plaintiffs' interests. Accordingly, the Court finds that plaintiffs have failed to establish that they have suffered a procedural injury.

---

[5] In fact, on February 14, 2009, the Tribe passed a general council resolution to comply with Williamson Act land use restrictions on the parcel and to waive its sovereign immunity in order to allow Sonoma County to enforce Williamson Act contracts. *See* Intervenor Mot., ex. 7.

9

## CONCLUSION

For the foregoing reasons, the Court finds that plaintiffs have not alleged facts that show they have suffered an injury in fact and thus do not have constitutional standing to bring the claims alleged in their FAC. Defendants' and Intervenor's motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) are therefore GRANTED. Judgment will be entered accordingly.

**IT IS SO ORDERED.**

Dated: April 21, 2009

SUSAN ILLSTON
United States District Judge